**A.Y. STRAUSS LLC**
Eric H. Horn, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax  (973) 533-0217

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>288 4TH LLC,<br><br>        Debtor. | Chapter 11<br><br>Case No. 24-43626-ess |
| HAIM KAHAN,<br><br>        Plaintiff,<br><br>    v.<br><br>COHEN TAUBER SPIEVACK &<br>WAGNER P.C., YECHESKEL WEISZ,<br>AND SHAI WEISZ<br><br>        Defendants. | Adv. P. No. 24-01089-ess |

**OBJECTION TO HAIM KAHAN'S MOTION SEEKING REMAND**

      288 4th LLC, debtor and debtor-in-possession herein (the "***Debtor***"), hereby objects to the

motion Haim Kahan seeking remand of the above-captioned adversary proceeding to the New

York State Supreme Court, County of Kings  (the "***Motion***"), and respectfully states as follows:

1

## PRELIMINARY STATEMENT

1.      The various motions brought by Haim Kahan ("***Kahan***") are all part of a systemic pattern by Kahan to obtain property of the Debtor's estate (i.e., the $1.6 million) that he is not entitled to. By the Motion, Kahan is now seeking to remand the above-captioned adversary proceeding to the New York State Supreme Court, County of Kings. Notably, despite the fact that this Court already entered an order (such order is annexed hereto as **Exhibit A**) directing that the $1.6 million in funds be held in place, by his Motion, Kahan is seeking to, in a less than transparent manner, circumvent that Order by remanding the above-action back to state court. Such should not be tolerated.

2.      In support of his arguments, Kahan raises two points. First, that the Debtor is not permitted to remove the action from State Court due to the fact that the Debtor was not named as a party in the State Court action. While it is true that the Debtor is not a party to that action, the funds at issue belong to the Debtor and documentary evidence clearly supports same. Moreover, there is jurisprudence that holds that where the real party is not named in an action, such not-named party (such as the Debtor here) is permitted to remove an action pursuant to 28 U.S.C. § 1452.

3.      Kahan's second argument is that Debtor's counsel's firm filed the removal on behalf of Kahan and that the firm is violating ethical obligations since it does not represent Kahan. Such argument is not only specious, but it also smacks of bad faith. At no point did Debtor's counsel ever indicate that it represented Kahan as such firm represents the Debtor and only the Debtor. Kahan relies on the docket printout which mistakenly listed Debtor's counsel as also being counsel to Kahan. Such was rectified by a five minute telephone call to the Pacer Help Desk. The corrected docket printout is annexed hereto as **Exhibit B**.

4.     At bottom, the $1.6 million is an asset of the Debtor's estate which does not belong to Kahan.  Any attempts by Kahan to obtain such monies should not be permitted by this Court; and any further attempts should be deemed a violation of the automatic stay.  Accordingly, the Debtor respectfully submits that the Motion should be denied in its entirety.

## FACTUAL BACKGROUND

### A.     General Background

5.     On September 2, 2024, (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") with the United States Bankruptcy Court for the Eastern District of New York (the "***Bankruptcy Court***").

6.     The Debtor continues in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

7.     No trustee, examiner, or statutory committee has been appointed.

8.     The Debtor is 100% owned by Perl Weisz.

9.     On September 3, 2024, Kahan filed a third action (which is the subject of the Motion) by Order to Show Cause in the New York Supreme Court, Kings County titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC, Yecheskel Weisz and Shai Weisz*, Index No. 523694/2024 (the "***Subject Action***").[1]

10.     On September 5, 2024, Debtor removed the Subject Action to this Court, thus commencing the above-captioned adversary proceeding.

---

[1] As set forth below in Section E of this fact section, Kahan filed two previous actions seeking the same relief in the same court.

11.     On September 4, 2024, the Debtor commenced an adversary proceeding in this Court titled *288 4th LLC v. Haim Kahan, et al.*, Adv. P. No. 4-01087-ESS (the "**Adversary Proceeding**") by filing a complaint [Adv. P. Docket No. 1].

12.     On September 29, 2024, the Debtor filed an amended complaint [Adv. P. Docket No. 16] (the "**Amended Complaint**") in the Adversary Proceeding.

**B.      Weisz Family's Business Dealings with Chaim Kahan**

13.     The Weisz family has significant tortured history with Kahan, and engaged in four separate real estate deals with Kahan throughout 2022.

14.     Yecheskel Weisz was introduced to Kahan as someone who claimed to have significant cash reserves to invest in real estate.  Based on that assumption and some due diligence, the Weiszes engaged in business transactions with Kahan.

15.     Despite Kahan holding himself out as a real estate expert and closer, each of the deals that the Weiszes worked with Kahan on fell apart.  Importantly, the deals fell apart based on Kahan failing to provide the necessary funds or otherwise satisfy his obligations at the moment when those funds were required to close the transaction.

16.     By way of example, one of the deals worked on with Kahan fell apart when Kahan failed to attend a "time of the essence" closing, which resulted in the release of a $1 million deposit for an $11 million property.  As a result of that deal falling apart, Kahan commenced an action in New York state court (*525 Park Williamsburg LLC v. 525 Park LLC*, Index No. 521411/2023 – NYS Supreme Court, Kings County) seeking specific performance from the seller.  Based on Kahan's failure to close, that case was dismissed.   Ultimately, 525 Park Williamsburg LLC (Kahan's entity) ended up in bankruptcy court and is being heard by Judge Stong in the chapter 11 case titled *In re 525 Park Williamsburg LLC*, Case No. 24-40228-ess.

17.     Other deals between Kahan and the Weiszes ended in similar fashions where the parties would get close to closing and Kahan would default on his obligations. Simply stated, such is Kahan's *modus operandi*.

18.     The issues at play here are no different and fall squarely within Kahan's behavioral pattern.

**C.     The Origin of the $1.6 Million at Issue**

19.     This case is all about recovering the $1.6 million of the Debtor's property that was wrongfully transferred.

20.     That $1.6 million arose from a $2 million deposit that was posted by the Debtor for the purchase of a particular property. Indeed, pursuant to a certain purchase agreement dated as of November 4, 2022 between Crown 286 4th LLC and 2123 Denton LLC, as sellers, and the Debtor as buyer (the "***Purchase Agreement***") pursuant to which the Debtor was to purchase the property located at 288 4th Avenue, Brooklyn, New York (the "***Property***"), the Debtor posted a $2 million contract deposit.

21.     Because Kahan failed to live up to his obligations, that deal fell apart and the Debtor was at risk of losing its full $2 million deposit.

22.     In an effort to avoid a full loss, the Debtor and Crown 286 4th LLC and 2123 Denton LLC (Sellers) ultimately entered into an agreement by which the Debtor would forfeit $400,000 as opposed to the full $2 million.  This agreement was memorialized in the Termination Agreement.

23.     The returned funds are the subject of this Adversary Proceeding.

**D.     Kahan's Relationship to the Debtor**

24.     As noted above, the Debtor is solely owned by Perl Weisz.  Kahan has no equity interest in the Debtor.

25.     What Kahan and the Debtor did agree to is that if the deal to purchase the Property closed and was ultimately flipped for a profit, such profit would be split 50/50.

26.     While it is true that Kahan did provide the Debtor with the $2 million deposit, such monies always belonged to the Debtor.  That $2 million was the price of admission for Kahan to participate in the ultimate upside via the 50/50 flip.

27.     Kahan's failure to provide remaining funds for closing as he was obligated to ultimately led to the demise of this deal.

28.     As a result, Debtor lost the deal, as well as the ability to flip it, and the contract was terminated, resulting in a Termination Agreement dated as of November 4, 2022. *See* Termination Agreement attached as **Exhibit C**.

29.     Pursuant to that Termination Agreement, the seller agreed to release all claims and return $1.6 million to Debtor, and retain $400,000. *See id*.

30.     Following the entry of the Termination Agreement, a dispute arose between the Weisz family and Kahan as to ownership of the $1.6 million returned deposit.

31.     While the dispute was ongoing, both the Weisz family and Kahan agreed that the money was to be placed in escrow with Riverside Abstract Inc. ("***Riverside***"), with an agreement that it would not be released until both parties agree or a rabbinical court decides its fate.

32.     The money remained with Riverside for two years without any agreement or determination as to the money.

33.     Putting aside the Weisz family and Kahan dispute for the moment, it is important to note that the $1.6 million belongs to neither the Weisz family nor Kahan. It belongs to the Debtor and its estate – plain and simple. In fact, the Termination Agreement clearly states that the $1.6 million is property of the Debtor. Indeed, the first Whereas clause provides as follows:

> WHEREAS, the Purchaser and Sellers have entered into a Purchase and Sale Agreement, dated August 3, 2022 (the "**PSA**") pursuant to which Purchaser has delivered to Bartfield and Knopfler PLLC, as Escrow Agent (the "**Escrow Agent**") the sum of $2,000,000 as the down payment towards the Purchaser Price for the Premises described therein (the "**Down Payment**").

Exhibit C, Termination Agreement at 1st Whereas Clause.

Purchaser is defined in the Termination Agreement as the Debtor. Indeed, the Termination Agreement provides in the Preamble as follows: "**288 4th LLC**, a New York limited liability company, having an address at 320 Roebling Street, Suite 304, Brooklyn, New York 11211 (hereinafter referred to as "**Purchaser**")". Exhibit C, Termination Agreement at Preamble.

34.    As further evidence that the $1.6 million belongs to the Debtor is provided for further in the Termination Agreement as follows: "The Parties mutually authorize and direct the Escrow Agent to disburse $400,000.00 of the Down Payment to Sellers by wire transfer to such Parties in accordance with wire instructions set forth hereinbelow and $1,600,000 to Purchaser, by wire transfer in accordance with wire instructions to be provided to the Escrow Agent by the Purchaser." Exhibit C, Termination Agreement at § 2.

35.    The Weisz family has recognized that the $1.6 million belongs to the Debtor. Kahan, however, refused to accept that fact despite the overwhelming documentary evidence supporting such ownership by the Debtor.

**E.    Kahan Initiates Lawsuit after Lawsuit to Wrongfully Obtain the $1.6 million**

*(i)    The First Action*

36.    On July 19, 2024, Kahan commenced his first action in New York state court (the "***State Court***") titled *Kahan v. Weisz et al*., Index No: 519589/2024 (the "***First Action***"). In that action, Kahan sought to compel Yecheskel Weisz and Shai Weisz to arbitration to determine the ownership of the $1.6 million.

37.    In that action, in the form of interim relief, Kahan requested that the State Court transfer the $1.6 million out of Riverside and have the State Court hold such funds.

38.    The Weisz family thought that transferring the monies out of Riverside and into the State Court was wise as the monies would be safer with the State Court than Riverside. Based on Kahan's request to transfer the funds to the State Court, Weisz did not enter any opposition.

39.    Instead of transferring the funds to the State Court, however, the State Court ordered the money be transferred to the escrow account of Kahan's counsel — Defendant Cohen Tauber, under the same terms as Riverside.

40.    Pursuant to an order entered in the First Action on July 22, 2024, the $1.6 million was transferred from Riverside to the escrow account of Defendant Cohen Tauber.

41.    On July 23, 2024, Stephen Wagner, Esq. (of Cohen Tauber) sent an email to various parties in which he confirmed that the $1.6 million would not be transferred out of Cohen Tauber's escrow account until such time as Kahan and Yecheskel Weisz agree to release such or the parties are otherwise ordered to do so by the Jewish Rabbinical Court, the same agreement that existed with Riverside.

42.    The case was marked off the calendar due to Mr. Wagner's lack of service, and the Debtor has been advised that Mr. Wagner confirmed to counsel for Yecheskel Weisz and Shai Weisz (Andrea Caruso, Esq. of Schwartz Sladkus Reich Greenberg Atlas LLP) that despite the dismissal, Mr. Wagner would continue to hold the money in escrow. However, the case being marked off meant Mr. Wagner was supposed to return the funds to Riverside, as he was only holding the money per the order pending the motion hearing.

*(ii)      The Second Action*

43.      On a Friday afternoon, two weeks later, Kahan filed a lawsuit against Defendant Cohen Tauber, demanding that the escrow funds be released to Kahan.

44.      Indeed, on August 30, 2024, Kahan commenced a second action in the State Court by Order to Show Cause titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC*, Index No. 523487/2024 (the "***Second Action***").

45.      In the Second Action, without notice to any other party other than Cohen Tauber, Kahan sought to have the $1.6 million turned over to him.  The Weiszes were improperly excluded from this action.

46.      Shockingly, Defendant Cohen Tauber filed an affirmation stating it had no opposition to Kahan's request.

47.      Because of that affirmation, the State Court entered an order directing that the $1.6 million of Debtor funds held by Cohen Tauber be turned over to Kahan.

48.      Tellingly, Cohen Tauber as the escrow agent (and Kahan's former counsel) failed to notify Weisz as it was obligated to about the lawsuit, the relief requested therein, and the decision by Cohen Tauber to put in an affirmation of no opposition to the relief requested.

49.      In other words, Kahan's former lawyer who was serving as escrow agent willfully participated in some sort of scheme to direct the funds to its former client – Kahan, with full knowledge that a dispute existed over its ownership between the parties.  That is troubling at best.

50.      Ultimately, the State Court ordered the transfer of funds to Kahan, again in the form of interim relief, which was initially unnoticed until Mr. Weisz's team discovered the lawsuit while searching court dockets.

51.     Upon learning of such order, the Debtor commenced an emergency chapter 11 on September 2, 2024 and filed a Notice of Suggestion of Bankruptcy on the State Court docket in the Second Action.

52.     Additionally, counsel to Yecheskel Weisz and Shai Weisz at around 7:00 am (ET) on September 3, 2024 filed an Order to Show Cause with supporting papers to have the Court's August 30, 2024 order vacated.  Apparently, there was a need by Defendant Kahan to have immediate access to the Debtor's funds as Defendant Kahan claimed to need the money for a time of the essence closing.  Again, these funds are not Defendant Kahan's.  Rather such belongs to the Debtor as clearly indicated in the Termination Agreement.

53.     To seemingly avoid the Order to Show Cause which has been filed, Kahan immediately thereafter filed a Notice of Discontinuance in the Second Action in an attempt to cut off Yecheskel Weisz and Shai Weisz's argument that the monies belonged to the Debtor.

54.     The Court Order in the second action, again, was in the form of interim relief, and therefore became invalid upon the filing of the Notice of Discontinuance.

*(iii)    The Third Action*

55.     Even more bizarre, upon filing the Notice of Discontinuance, on September 3, 2024, Kahan filed a third action (which is the subject of the Motion) by Order to Show Cause in the State Court titled *Haim Kahan v. Cohen Tauber Spievack & Wagner PC, Yecheskel Weisz and Shai Weisz*, Index No. 523694/2024 (the "***Subject Action***").  This time, despite naming the Weiszes, Kahan only gave notice to Cohen Tauber.

56.     Again, without any notice to the Weiszes or the Debtor, the State Court entered an order which seems to be inconsistent with the August 30, 2024 order entered in the Second Action. See Order dated September 3, 2024 annexed hereto as **Exhibit D.**

57.     On September 4, 2024, the State Court in the Third Action entered an Order to Show Cause which prevents Defendants Haim Kahan and Cohen Tauber from transferring the funds and/or using such funds to the extent that the transfer already took place.  A copy of that order (the "***State Court Stay Order***") is annexed hereto as **Exhibit E**.  Such Order supersedes the previous orders to show cause entered in the State Court.

58.     Counsel for the Weiszes again filed an Order to Show Cause seeking the stay of the State Court Stay Order which was ultimately signed by the Court.

59.     On September 4, 2024, the Debtor commenced this adversary proceeding in this Court and filed an order to show cause seeking to prevent Cohen Tauber from transferring the funds out of its escrow account.

60.     On September 5, 2024, this Court entered an order in this Adversary Proceeding which in substance provided that "[t]he parties are directed to preserve the status quo with respect to the use of the funds at issue . . ."  Such order (the "***Chapter 11 Adversary Stay Order***") was entered as Docket No. 7 in this Adversary Proceeding and is attached as Exhibit A hereto.

61.     Despite this Court's entry of the Chapter 11 Adversary Stay Order and the State Court's entry of the State Court Stay Order, upon information and belief Cohen Tauber transferred the $1.6 million out of its escrow account via an ACH transfer.  Mr. Wagner, knowing quite well that the funds were property of the Debtor's estate,  had various opportunities to stop the ACH transfer, yet he refused to do so.

62.     While the Debtor has reason to believe that such monies were transferred to Defendant Progressive, such has not been confirmed as the Defendants are refusing to provide the information regarding the transfer.

63. In fact, Mr. Kahan, despite telling the Court he needed the money for a closing, has denied knowledge of the whereabouts of the funds, which he personally initiated the ACH payment of from Cohen Tauber's escrow account.

## OBJECTION

### A. The Debtor's Removal of the Subject State Court Action was Proper

64. In its papers, Kahan asserts that the Debtor is not permitted to remove the Subject Action from State Court due to the fact that the Debtor was not named as a party in that State Court action. While it is true that the Debtor is not a party to that action, the funds at issue belong to the Debtor and documentary evidence clearly supports same, as discussed above. Moreover, there is jurisprudence that holds that where the real party is not named in an action, such not-named party (such as the Debtor here) is permitted to remove an action pursuant to 28 U.S.C. § 1452. *See In re Brateman Bros.*, 135 B.R. 853, 855-56 (Bankr. N.D. IN 1991) (noting that "[i]n determining who has the right to remove pending litigation, the term should not necessarily be construed in the formal sense, as extending to any named party to the action, but, instead, should be construed as something more akin to a 'real party in interest' or one who has a stake in the outcome.") (internal citation omitted); *Aetna Casualty & Surety v. Dauria (Matter of Pine Associates, Inc.)*, 40 B.R. 683 (Bankr. D. Conn. 1984) (finding that even though the removed action did not involve the debtor as a named party, removal to the bankruptcy court was proper); *Foursquare Properties, Joint Venture I v. Akins Keyboard Sales, Inc. (In re Akins),* 54 B.R. 529 (Bankr. E.D. Wis. 1985) (same).

65. Accordingly, the Debtor submits that removal of the Subject Action was proper and remand should be denied.

66. Moreover, in his papers, Kahan's second argument is that Debtor's counsel's firm filed the removal on behalf of Kahan and that the firm is violating ethical obligations since it does

not represent Kahan. Such argument is not only specious, but it also smacks of bad faith. At no point did Debtor's counsel ever indicate that it represented Kahan as such firm represents the Debtor and only the Debtor. Kahan relies on the docket printout which mistakenly listed Debtor's counsel as also being counsel to Kahan. Such was rectified by a five minute telephone call to the Pacer Help Desk. The corrected docket printout is annexed hereto as Exhibit B.

## **CONCLUSION**

For the reasons set forth herein, the Debtor respectfully requests that the Motion be denied in its entirety and that the Court grant such other and further relief as the Court deems just and proper.

Dated: October 23, 2024

Respectfully submitted,

**A.Y. STRAUSS LLC**

By: ___*/s/ Eric H. Horn*_____
Eric H. Horn, Esq.
290 West Mount Pleasant Avenue, Suite 3260
Livingston, New Jersey 07039
Tel. (973) 287-5006
Fax (973) 533-0217

*Attorneys for the Debtor*

Exhibit A

[Judge Stong Order]



Alexander Shiryak, Esq.
Dustin Bowman, Esq.
Mark Anderson, Esq.
Navpreet K. Gill, Esq.
Alexander Kadochnikov, Esq.

Btzalel Hirschhorn, Esq. ● Matthew J. Routh, Esq. ● Nicholas Neocleous, Esq

September 4, 2024

Hon. Elizabeth S. Stong
United States Bankruptcy Judge
U.S. Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800

**RE: 288 4ᵗʰ LLC, v. HAIM KAHAN, COHEN TAUBER
SPIEVACK & WAGNER P.C.,
YECHESKEL WEISZ, AND SHIA
WEISZ; Case No. -24-01087-ess**

Dear Judge Stong,

Our office was retained today on behalf of Defendant Haim Kahan ("Kahan") in the above referenced matter. This letter is to inform the Court that our office intends to oppose the Order to Show Cause and request for Temporary Restraining Order filed earlier today by the Debtor Plaintiff in the above referenced matter. We write to respectfully request that this Court decline to grant any injunctive relief until the undersigned has had an opportunity to fully brief this matter and the Parties have had an opportunity to be heard.

This case involves a complex fact pattern with lengthy pre-petition litigation in State Court. Given the nascent stage of the instant Adversary Proceeding, no prejudice will result in allowing Defendant Kahan an opportunity to fully address the allegations in the Order to Show Cause.

Nothing in this letter is meant to be construed as a waiver of Kahan's rights to assert any and all defenses to any of the allegations or causes of action asserted in any pleading filed by Plaintiff or any other party in this matter, including, but not limited to any jurisdictional defenses.



SHIRYAK, BOWMAN
ANDERSON, GILL &
KADOCHNIKOV LLP

Alexander Shiryak, Esq.
Dustin Bowman, Esq.
Mark Anderson, Esq.
Navpreet K. Gill, Esq.
Alexander Kadochnikov, Esq.

Btzalel Hirschhorn, Esq. ● Matthew J. Routh, Esq. ● Nicholas Neocleous, Esq

Please do not hesitate to contact the undersigned should the Court have any further questions or concerns regarding this matter.

Very Truly,

/s/ Btzalel Hirschhorn
Btzalel Hirschhorn, Esq.

*__The Court has reviewed this letter from counsel to the Defendants, dated September 4, 2024 at ECF No. 3 and the letter from counsel to the Plaintiff, dated September 4, 2024 at ECF No. 5.__*

*__The parties are directed to preserve the status quo with respect to the use of the funds at issue and to file a status letter with this Court by September 5, 2024, at 4:00 PM.__*

*__It is so ordered.__*

Dated: Brooklyn, New York
September 5, 2024



Elizabeth S. Stong
United States Bankruptcy Judge

Exhibit B

[Docket Sheet]

# U.S. Bankruptcy Court
# Eastern District of New York (Brooklyn)
# Adversary Proceeding #: 1-24-01089-ess

*Assigned to:* Elizabeth S. Stong                          *Date Filed:* 09/05/24
*Lead BK Case:* 24-43626
*Lead BK Title:* 288 4th LLC
*Lead BK Chapter:* 11
*Demand:*

*Nature[s] of Suit:* 11 Recovery of money/property - 542 turnover of property
                     14 Recovery of money/property - other

## Plaintiff
----------------------
**Chaim Kahan**                          represented by **Btzalel Hirschhorn**
                                         Shiryak, Bowman, Anderson, Gill &
                                         Kadochnikov, LLP
                                         80-02 Kew Gardens Road, Suite 600
                                         Kew Gardens, NY 11415
                                         (718) 263-6800
                                         Fax : 718-520-6401
                                         Email: Bhirschhorn@sbagk.com

V.

## Defendant
----------------------
**Cohen Tauber Spievack & Wagner, P.C.**   represented by **Cohen Tauber Spievack & Wagner, P.C.**
                                           PRO SE

## Defendant
----------------------
**Yecheskel Weisz**                        represented by **Yecheskel Weisz**
                                           PRO SE

## Defendant

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-

**Shia Weisz**                          represented by **Shia Weisz**
                                                  PRO SE

| Filing Date | # | Docket Text |
|---|---|---|
| 09/05/2024 | [1](#)<br>(169 pgs; 9 docs) | Adversary case 1-24-01089. Notice of Removal *Notice of Removal filed by Debtor 288 4th LLC* by Debtor 288 4th LLC. Fee Amount $350. Nature(s) of Suit: (11 (Recovery of money/property - 542 turnover of property)), (14 (Recovery of money/property - other)). (Attachments: # [1](#) Exhibit A # [2](#) Exhibit B # [3](#) Exhibit C # [4](#) Exhibit D # [5](#) Exhibit E - Part 1 # [6](#) Exhibit E - Part 2 # [7](#) Exhibit E - Part 3 # [8](#) Exhibit E - Part 4) (Horn, Eric) Modified on 9/18/2024 corrected filing party (jag). (Entered: 09/05/2024) |
| 09/05/2024 | | Receipt of Notice of Removal( [1-24-01089-ess](#)) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt number A22927944. Fee amount 350.00. (re: Doc# [1](#)) (U.S. Treasury) (Entered: 09/05/2024) |
| 09/06/2024 | 2 | Entered in Error-Notice of Pre-Trial Conference Pre-Trial Conference set for 10/10/2024 at 10:30 AM at Courtroom 3585 (Judge Stong), Brooklyn, NY.(RE: related document(s)[1](#) Notice of Removal filed by Plaintiff Chaim Kahan) (ylr) Modified on 9/6/2024 (ylr). (Entered: 09/06/2024) |
| 09/06/2024 | [3](#)<br>(3 pgs; 2 docs) | Notice of Pre-Trial Conference Pre-Trial Conference set for 10/10/2024 at 10:30 AM at Courtroom 3585 (Judge Stong), Brooklyn, NY.(RE: related document(s)[1](#) Notice of Removal filed by Plaintiff Chaim Kahan) (ylr) (Entered: 09/06/2024) |
| 09/08/2024 | [4](#)<br>(4 pgs) | BNC Certificate of Mailing with Application/Notice/Order Notice Date 09/08/2024. (Admin.) (Entered: 09/09/2024) |
| 09/09/2024 | [5](#)<br>(18 pgs; 3 docs) | Motion for Remand *to Kings County Supreme Court* Filed by Btzalel Hirschhorn on behalf of Chaim Kahan. Hearing scheduled for 10/31/2024 at 10:30 AM at Courtroom 3585 (Judge Stong), Brooklyn, NY. (Attachments: # [1](#) Affidavit # [2](#) Exhibit a) (Hirschhorn, Btzalel) (Entered: 09/09/2024) |

| | | |
|---|---|---|
| 09/17/2024 | 6<br>(3 pgs) | Affidavit/Certificate of Service Filed by Btzalel Hirschhorn on behalf of Chaim Kahan (RE: related document(s)5 Motion for Remand filed by Plaintiff Chaim Kahan) (Hirschhorn, Btzalel) (Entered: 09/17/2024) |
| 10/09/2024 | 7<br>(1 pg) | Letter *Requesting Adjournment* Filed by Btzalel Hirschhorn on behalf of Chaim Kahan (RE: related document(s)3 Notice of Pre-Trial Conference Re: Notice of Removal) (Hirschhorn, Btzalel) (Entered: 10/09/2024) |
| 10/10/2024 | | Adjourned Without Hearing - Pre-Trial Conference set for 10/31/2024 at 10:30 AM at Courtroom 3585 (Judge Stong), Brooklyn, NY.(RE: related document(s)3 Notice of Pre-Trial Conference Re: Notice of Removal, 1 Notice of Removal Filed by Plaintiff Chaim Kahan) (sej) (Entered: 10/10/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/23/2024 11:45:44 | | |
| **PACER Login:** vbh123456 | **Client Code:** 2884th | |
| **Description:** Docket Report | **Search Criteria:** 1-24-01089-ess Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included | |
| **Billable Pages:** 2 | **Cost:** 0.20 | |

Exhibit C

[Termination Agreement]

# TERMINATION AGREEMENT

THIS TERMINATION AGREEMENT ("**Agreement**") is made as of the 4th day of November, 2022 by and between **CROWN 286 4th AVENUE LLC and 2123 DENTON LLC**, both New York limited liability companies maintaining an address at 478 Albany Avenue #88, Brooklyn, NY 11203 (collectively hereinafter referred to as "**Sellers**"), **288 4th LLC**, a New York limited liability company, having an address at 320 Roebling Street, Suite 304, Brooklyn, New York 11211 (hereinafter referred to as "**Purchaser**") and **CHEZKIE WEISZ** and **SHIE WEISZ** (jointly and severally hereinafter referred to as "**Guarantors**"). Sellers and Purchaser are jointly referred to herein as the "Parties" and each as a "Party".

W I T N E S S E T H:

WHEREAS, the Purchaser and Sellers have entered into a Purchase and Sale Agreement, dated August 3, 2022 (the "**PSA**") pursuant to which Purchaser has delivered to Bartfield and Knopfler PLLC, as Escrow Agent (the "**Escrow Agent**") the sum of $2,000,000 as the down payment towards the Purchaser Price for the Premises described therein (the "**Down Payment**"); and,

WHEREAS, Purchaser has informed Sellers that it will be unable to pay the balance of the Purchase Price as and when required under the PSA and, as a result thereof, the Parties mutually desire to terminate the PSA in accordance with the terms and conditions herein set forth.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, and subject to the terms and conditions hereof, Sellers, Purchaser and the Guarantors hereby covenant and agree as follows:

1.      The Parties mutually agree to terminate the PSA, and all of the obligations of the Parties thereunder, effective upon the execution hereof.

2.      The Parties mutually authorize and direct the Escrow Agent to disburse $400,000.00 of the Down Payment to Sellers by wire transfer to such Parties in accordance with wire instructions set forth hereinbelow and $1,600,000 to Purchaser, by wire transfer in accordance with wire instructions to be provided to the Escrow Agent by the Purchaser.

3.      Purchaser and the Guarantors jointly and severally represent and warrant to Sellers that (i) Purchaser has not assigned any of its rights or obligations under the PSA to any other person or entity, (ii) Purchaser has not filed any plans and specifications regarding the Premises described in the PSA with the Department of Buildings or made any other filing with any other governmental agencies with respect to such Premises, and (iii) Purchaser and/or the Guarantors shall remain solely responsible for any fees or

commissions which may be due, or become due, to the Broker described in the PSA. These representations shall survive the termination of the PSA.

4.      The Parties, on behalf of themselves, their Members, managers, affiliates, agents and representatives (collectively, the "Released Persons"), hereby release and discharge the other Party, together with all their Released Persons, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties and expenses (including attorneys' fees and costs actually incurred) of any kind, nature or description whatsoever, known or unknown, which either Party has, or may have had, against the other Party or any of the Released Persons from the beginning of the world to the date of the execution of this Agreement, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from the PSA or any other agreement or understanding between the Parties and any other matter, dealings, interactions or relationships between the Parties or any of the Released Persons of any kind, nature or description whatsoever, other than other than a breach of the representations, agreements and warranties set forth in Sections 3 and 5 hereof, none of which shall not be affected by this mutual release.

5.      Purchaser expressly and irrevocably hereby waives forever any right whatsoever to, and agrees and warrants that it shall not under any circumstances, file a Notice of Pendency against the Premises or file or commence any other action or proceeding of any kind, nature or description (including an arbitration or mediation proceeding) against Sellers, Sellers' Members, Sellers' Managers or against the Premises. Purchaser and the Guarantors acknowledge that it is extremely difficult and impractical to ascertain the extent of the detriment to be sustained by Sellers as a result of Purchaser's breach of its waiver and undertaking in this Section 5 and agree that if the Purchaser (or anyone on its behalf) shall violate any the terms set forth in Section 5, the Purchaser and the Guarantors shall be jointly and severally liable to Sellers in the sum of $5,000,000.00 as of the moment any such Notice of Pendency, action or proceeding is filed or commenced, as liquidated damages, the amount of which the Purchaser and Guarantors acknowledge represents a bona fide good faith estimate of the damages Sellers would suffer in such event and a reasonable forecast of just compensation for the harm that would be caused to Sellers by such a breach by Purchaser. This sum shall be in addition to Sellers' right to retain the portion of the Down Payment described above.

6.      Each Party shall be responsible for its own costs incurred in connection with the PSA, this Agreement or any other dealings or interactions between them.

7.      This Agreement contain all of the terms, promises, covenants, conditions and representations made or entered into by or between Parties and supersedes the PSA as well as any prior discussions and other agreements, whether written or oral, between them and all other matters contained in the PSA or herein and constitutes the sole and entire surviving agreement between the Parties.  Any conflict between the PSA and this Agreement shall be resolved in favor of this Agreement, with the terms hereof to govern.

8.      This Agreement cannot be changed, modified, discharged or terminated by any oral agreement or any other agreement and there cannot be any waiver of the warranties, representations and covenants expressly contained in this Agreement unless the same is in writing and signed by the party against whom enforcement of the change, modification, discharge, termination or waiver is sought.

9.      This Agreement may be executed in any number of counterparts (including counterparts transmitted by fax or by electronic mail in PDF format), each of which shall be deemed an original and enforceable against the parties actually executing such counterpart, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Termination Agreement as of the date first above written.

CROWN 286 4th AVENUE LLC

By: _____
Name: Hosea Deitsch
Title:  Authorized Signatory

2123 DENTON LLC

By: _____
Name: Hosea Deitsch
Title:  Authorized Signatory

288 4th LLC

By: _____
Name: Chezkie Weisz
Title:  Authorized Signatory

_____
Chezkie Weisz, Guarantor

_____
Shie Weisz, Guarantor

Escrow release instructions agreed to by
Bartfield and Knopfler PLLC

By: _Joseph Bartfield_____
Joseph Bartfield, Member

# ACKNOWLEDGEMENTS

STATE OF NEW YORK     )
                                 )
COUNTY OF KINGS     ) ss.:

On the __ day of November in the year 2022 before me, the undersigned, personally appeared Hosea Deitsch, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

STATE OF NEW YORK     )
                                 )
COUNTY OF KINGS     ) ss.:

On the 4th day of November in the year 2022 before me, the undersigned, personally appeared Chezkie Weisz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

Ariel S. Farkas
STATE
OF NEW YORK
NOTARY PUBLIC
Qualified in Richmond County
02FA6385785
MY COMMISSION EXPIRES 01/22/2023

4

**SELLERS' WIRE INSTRUCTIONS:**

Bank:                     Cross River Bank
Bank Address:             2115 Linwood Avenue, Fort Lee, NJ 007024
Account Name:             Crown 286 4th Avenue LLC
Account Address:          478 Albany Avenue #88, Brooklyn, NY 11203
Routing Number:           ████████
Account Number:           ████████

**PURCHASER'S WIRE INSTRUCTIONS:**

Bank:
Bank Address:
Account Name:
Account Address:
Routing Number:
Account Number:

Exhibit D

[State Court Order]

At IAS Part **92** of the Supreme
Court of the State of New York, held
in and for the County of New York, at
the County Courthouse thereof,
located at 360 Adams Street, in the
Borough of Brooklyn, City and State
of New York, on September **4th**,
2024

PRESENT:

HON. Katherine Levine, J.S.C.

~~Justice.~~

HAIM KAHAN,

                                                    Plaintiff,

                    - against –

COHEN TAUBER SPIEVACK & WAGNER P.C.,
YECHESKEL WEISZ AND SHIA WEISZ,

                                                    Defendant.

Index No.: 523694/2024

**ORDER TO SHOW
CAUSE**

Upon reading and filing the annexed Affirmation of Andrea J. Caruso, Esq., dated
September 4, 2024, the exhibits annexed thereto and all pleadings and upon all prior proceedings
and pleadings in this action,

**LET** the Plaintiff and Defendant, or their counsel appear and show cause before this Court,
at an IAS Part **92** at the Kings County Courthouse located at 360 Adams Street, Brooklyn, New York,
10007, Room **541**, on **September 18, 2024**, 2024, at **2:00** ~~AM~~/PM, or as
soon thereafter as counsel can be heard, why an Order should not be entered granting the motion
of Defendants Yecheskel Weisz and Shia Weisz, vacating the Temporary Restraining Orders
contained within the Order to Show Cause dated September 3, 2024 issues in this action pursuant
to CPLR 6314, and for an award of sanctions against Plaintiff pursuant to 22 NYCRR § 130-1.1
together with such other and further relief as the Court deems just and proper.

STAY

NOW, SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY

ORDERED, that pending a hearing of this order to show cause, the Order to Show cause

dated September 3, 2024 (NYSCEF Doc. No. 3), including all interim relief granted, be

hereby stayed, including the use of any of the $1.6 million dollars transferred and/or previously held
by defendant, Cohen Tauber, Spievack & Wagner, P.C.,

J.S.C.

LET, service of a copy of this conformed order to show cause and the papers upon which

personal service                    plaintiff's counsel and all other

it was granted, by ~~NYSCEF filing with a copy via email to~~ ~~Counsel who have appeared on this~~

parties entitled to service

~~action~~ on or before  Sept 9          , 2024, shall be good and sufficient service thereof.

ENTER

HON. LISA S. OTTLEY, J.S.C.

HON. LISA S. OTTLEY